UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(A)  TAO JIANG,<br>     aka JASON JIANG,<br><br>(B)  BOHR WINN-SHIH,<br><br>(C)  BROAD TECH SYSTEM,<br>     INCORPORATED<br>            Defendants. | Cr. No. _____1:20CR43JJM-PAS_____<br><br>In violation of:<br><br>18 U.S.C. § 371<br>Conspiracy<br><br>50 U.S.C. § 4801 et seq.<br>Violation of the Export Control<br>Reform Act<br><br>18 U.S.C. § 1956(h)<br>Money Laundering Conspiracy |

THE GRAND JURY CHARGES THAT:

At all times material to this indictment:

### Defendants and Other Entities

1.      **Company A,** a business located in Rhode Island whose identity is known to the Grand Jury, was engaged in an industry that supplied items necessary to the construction of semiconductors.

2.      **Company B,** a business with locations in California whose identity is known to the Grand Jury, was engaged in the shipping and exportation of commodities.

3.      **Company C,** a business located in California whose identity is known to the Grand Jury, was engaged in the business of industrial packaging, repackaging and crating for the protection of shipped commodities.

4.      **BROAD TECH SYSTEM, INCORPORATED (BROAD TECH)** was a privately-owned electronics distribution company located in Ontario, California. BROAD TECH specialized in the production and processing of new and refurbished semiconductor front-end fabrication (FAB).  BROAD TECH conducted approximately 3.2 million dollars in sales annually, the vast majority of which related to international exports.

5.      **Tao JIANG (JIANG)**, also known as "Jason" Jiang, was the owner, Chief Executive Officer, Chief Financial Officer, President and Secretary of BROAD TECH. JIANG served as the point of contact for Chinese sales by BROAD TECH.

6.      **Bohr WINN-SHIH (SHIH)**, was the equipment engineer for BROAD TECH and was deeply involved in the export compliance side of the business.

7.      **China Electronics Technology Group Corporation 55th Research Institute (CETC 55)** also known as Nanjing Electronic Devices Institute, CETC Research Institute 55, NEDI, and NEDTEK, was a state-owned Chinese entity that mainly engaged in the manufacturing of electronic components and the research, development and production of core chips and key components in China's military strategic early warning systems, air defense systems, airborne fire control systems, manned space systems, and other national large-scale projects.  The research institute also promoted civil-military integration.

## The Export Control Reform Act

8.      The Export Control Reform Act of 2018 ("ECRA") provides, among its stated policy objectives, that "the national security and foreign policy of the United

States require that the export, re-export, and in-country transfer of items, and specific

activities of United States persons, wherever located, be controlled…." 50 U.S.C. §

4811.  To that end, ECRA grants the President the authority "(1) to control the export,

re-export, and in-country transfer of items subject to the jurisdiction of the United

States, whether by United States persons or by foreign persons; and (2) the activities of

United States persons, wherever located, relating to" specific categories of items and

information.  50 U.S.C. § 4812.  ECRA further grants the Secretary of Commerce the

authority to establish the applicable regulatory framework.

      9.     Pursuant to that authority, the Department of Commerce ("DOC") reviews

and controls the export of certain items, including goods, software, and technologies,

from the United States to foreign countries through the Export Administration

Regulations ("EAR"), 15 C.F.R. §§ 730-774.  In particular, the EAR restrict the export of

items that could make a significant contribution to the military potential of other

nations or that could be detrimental to the foreign policy or national security of the

United States.  The EAR impose licensing and other requirements for items subject to

the EAR to be lawfully exported from the United States or lawfully re-exported from

one foreign destination to another.

      10.    Furthermore, DOC maintains the Entity List, which is a list of names of

certain foreign persons – including businesses, research institutions, government and

private organizations, individuals, and other types of legal persons – that were subject

to specific license requirements for the export, re-export or transfer (in-country) of items

subject to the EAR.  On an individual basis, persons on the Entity List were subject to

licensing requirements and policies supplemental to those found elsewhere in the EAR.

11.     Pursuant to ECRA, "[i]t shall be unlawful for a person to violate, attempt

to violate, conspire to violate, or cause a violation of this part or of any regulation,

order, license, or other authorization issued under this subchapter," and, "[a] person

who willfully commits, willfully attempts to commit, or willfully conspires to commit,

or aids or abets in the commission of, an unlawful act described in subsection (a) shall"

be guilty of a crime.  50 U.S.C. § 4819.

### The Commodities

12.     The commodities at issue ("The Commodities") were: (i) HiPR 6517

Photoresist (Photoresist), which is a chemical used in the manufacturing process of

computer chips and the fabrication of integrated circuit devices.  Photoresist is a

substance whose reaction to light is employed in the process of creating pathways on

computer wafers via the exposure of the wafers to light, and (ii) HPRD441 which is a

consumable product also used in the production of computer wafers, in concert with

Photoresist.

### Licensing Requirements and Status

13.     On August 1, 2018, acting pursuant to the EAR, the multi-agency body

known as the End-user Review Committee ("ERC"), in accordance with § 744.11(b) of

the EAR, added numerous entities to the Department of Commerce, Bureau of Industry

and Security (BIS) Entity List, finding "that there is reasonable cause to believe, based

on specific and articulable facts, that all of these entities are involved in the illicit

procurement of commodities and technologies for unauthorized military end-use in

China."  Among the entities added to the Entity List were China Electronics Technology Group Corporation 55th Research Institute (CETC 55), of Nanjing, China.  This publication also listed aliases for CETC of Nanjing Electronic Devices Institute, CETC Research Institute 55, NEDI and NEDTEK.  For all entities added to the Entity List, including CETC 55 a/k/a NEDI, BIS imposes a license requirement for all items subject to the EAR, and a license review policy of presumption of denial.  The license requirements apply to any transaction in which items are to be exported, re-exported or transferred (in-country) to any of the entities or in which such entities act as purchaser, intermediate consignee, ultimate consignee, or end-user.  In addition, no license exceptions are available for exports, re-exports or transfers (in-country) to the entities being added to the Entity List in this rule."  In light of this addition, CETC 55 a/k/a NEDI would not be permitted to receive exports from the United States of any item subject to the EAR.

14.     At no time on or after August 1, 2018, did the defendants, TAO JIANG, aka JASON JIANG, BOHR WINN-SHIH, or BROAD TECH apply for, receive or possess a license or authorization from The Department of Commerce, Bureau of Industry and Security, to export The Commodities to CETC 55, Nanjing Electronic Devices Institute, CETC Research Institute 55, NEDI and/or NEDTEK.

## COUNT ONE
*Conspiracy*
18 U.S.C. § 371

15.     The allegations in paragraphs 1 through 14 are incorporated by reference herein.

16.     Beginning in or about August 2018, the exact date being unknown to the grand jury, and continuing until on or about the date of this Indictment, in Rhode Island, and elsewhere, the defendants,

> **(A) TAO JIANG,**
> **aka JASON JIANG**
> **(B) BOHR WINN-SHIH, and**
> **(C) BROAD TECH SYSTEM, INCORPORATED,**

aided and abetted by each other and by others unknown, with some joining the conspiracy earlier and others joining later, did knowingly and willfully combine, conspire, confederate, agree and have a tacit understanding with each other and with others known and unknown to the Grand Jury to commit offenses against the United States, and to defraud the United States, to wit:

    a.  to willfully export, attempt to export, and cause the export of The Commodities from the United States to a party on the BIS Entity List, to wit: **China Electronics Technology Group Corporation 55th Research Institute (CETC 55) also known as Nanjing Electronic Devices Institute; CETC Research Institute 55; NEDI, and NEDTEK**, without first having obtained the required licenses or authorizations from BIS, in violation of 50 U.S.C. § 4819 and 15 C.F.R. § 764.2.

    b.  to knowingly submit, attempt to submit, and cause to be submitted false and misleading export information through the Automated Export System (AES), in violation of 13 U.S.C. § 305.

c.  to fraudulently and knowingly export and send, and cause to be exported and sent, from the United States, merchandise, articles, and objects contrary to a law and regulation of the United States, that is, 13 U.S.C. § 305, in violation of 18 U.S.C. § 554.

d.  to defraud the Department of the Commerce by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the export or supply of goods from the United States to restricted parties without authorization or a license, by deceit, craft, trickery, and dishonest means.

## Objects of the Conspiracy

17.   The objects of the conspiracy were:

a.  to illegally enrich the conspirators by unlawfully exporting goods from the United States;

b.  to evade the regulations, prohibitions, and licensing requirements of the ECRA and the EAR; and

c.  to conceal the prohibited activities from Company A, Company B, Company C and the United States Government so as to avoid penalties and disruption of the illegal activity.

## Manner and Means of the Conspiracy

18.   It was a part of the conspiracy and among its manner and means that some of the defendants, aided and abetted by each other and others entered into

7

contracts for the purpose of procuring The Commodities from Company A, including agreeing to purchase ninety-four gallons of Photoresist and three hundred twenty-four units of HPRD 441;

      a. It was a further part of the conspiracy and among its manner and means that some of the defendants, aided and abetted by each other and others knowingly included materially false information in the contracts to obscure the real end user and end use of The Commodities, including by representing that the end user was NTESY;

      b. It was a further part of the conspiracy and among its manner and means that some of the defendants, aided and abetted by each other and others knowingly created additional false corporate documents to further obfuscate the intended end user and end use of The Commodities including by representing that the end user was NTESY;

      c. It was a further part of the conspiracy and among its manner and means that some of the defendants, aided and abetted by each other and others knowingly provided Company A materially false and fraudulent information regarding the end user and end use of The Commodities;

      d. It was a further part of the conspiracy and among its manner and means that some of the defendants, aided and abetted by each other and others knowingly provided Company B materially false and fraudulent information regarding the end user and end use of The Commodities;

      e. It was a further part of the conspiracy and among its manner and means

that some of the defendants, aided and abetted by each other and others

transmitted and caused to be transmitted email communications by wire

in interstate and foreign commerce; and

f.   Transmitted and caused to be transmitted monetary payments by wire in

interstate and foreign commerce.

### Overt Acts

19.   In furtherance of the conspiracy and to accomplish its objects, at least one

of the Defendants committed or caused to be committed, in Rhode Island and

elsewhere, at least one of the following overt acts:

a.   On or about August 1, 2018, Defendant JIANG sent Defendant SHIH two

emails approximately one minute apart.  The first email directed

Defendant SHIH to look at contact information for the BIS office in Irvine,

California with an attached index of the contact information.  The second

email read: "Chinese Entity List additional 2018."  Several hours later,

Defendant SHIH sent an email to Defendant JIANG which read, "Called

and they said the news of the 44 new entities in addition is real and the list

of addition can be found online below."  This was followed by a hyperlink

to the federal register entry of August 1, 2018 titled: "addition of certain

entities and modification of entry on the entity list", which added China

Electronics Technology Group Corporation 55th Research Institute (CETC

55) also known as Nanjing Electronic Devices Institute; CETC Research

Institute 55; NEDI, and NEDTEK to the entity list.  Below the hyperlink

was a link to the .pdf format of the August 1, 2018 federal register entry.
Below this the email read: "Attached is the downloaded PDF version of
Addition of Certain Entities: and Modification of Entry on the Entity List."

b. On August 15, 2018, Defendant SHIH received an email which read
"8/14/18 Note: Jason called and spoke with Tim.  (Company) has no
quote because the end user is NEDI (Jason provided for 2013 initial order).
***NEDI is included on the Entity List***."  Below this were the hyperlink
to the August 1, 2018 Federal Register addition of China Electronics
Technology Group Corporation 55th Research Institute (CETC 55) also
known as Nanjing Electronic Devices Institute; CETC Research Institute
55; NEDI, and NEDTEK to the Entity list, and a link to a .pdf version of
the same.

c. On October 25, 2018, the U.S. Customs and Border Protection National
Targeting Center identified that Company A attempted to export 58
gallons of Photoresist to NEDI without valid BIS authorization.
Notification was provided to the DOC.  An agent from DOC
communicated with the shipper who had the shipment recalled and
returned to Company A.

d. On or about October 29, 2018, Defendant JIANG called Company A and
requested to purchase ninety-four gallons of Photoresist.  Company A was
immediately suspicious because: they had never done business with
BROAD TECH; ninety-four gallons was a significant quantity of

10

Photoresist, several days before the shipment to NEDI had been recalled and further that NEDI knew about the recall.

e.  On or about October 29, 2018, Defendant SHIH contacted Company A via email with a copy to Defendant JIANG and asked for a quote and lead time for ninety-four gallons of Photoresist.

f.  On or about October 30, 2018, Defendant SHIH emailed Company A and falsely stated that the end customer in China for the Photoresist was NTESY Technology Co., Ltd.

g.  On or about October 31, 2018, Defendant JIANG emailed Company A and provided an address of No. 19 Su Yuan Ave., Nanjing, China for the purchaser of Photoresist.  Defendant JIANG also wrote that this was the address for the company's purchasing department and asked that Company A treat the information as confidential.

h.  On days and dates between on or about November 1-13, 2018, Defendant BROAD TECH provided documents containing materially false information to Company A by email including: a form, signed by Defendant SHIH, stating that NTESY was the ultimate consignee of the Photoresist; a second form, completed by Defendant SHIH identifying NTFSY (sic) Technology Co. Ltd. of China as the end user of the commodities, and a statement signed by Defendant JIANG that the products received from Company A under an export license would not be transferred without specific authorization.  The phone number listed on

11

the form identifying NTESY as the ultimate consignee of the Photoresist is the same phone number that appears on 2014 shipping documents created by BROAD TECH for an export to NEDI.

i.  On or about November 8, 2018, Defendant JIANG emailed Company A to request a quote for HPRD441.

j.  On November 12, 2018, at 3:17 PM, Defendant SHIH emailed Defendant JIANG. The email read: "NEDI new quote." The attachments included a Quotation reflecting that on November 12, 2018, Defendant BROAD TECH quoted Nanjing Electronic Devices Institute (NEDI), a price of $106,970 for ninety-four gallons of Photoresist. This price included shipping to CIP Shanghai Airport.

k.  On November 12, 2018, at 8:43 PM, Defendant SHIH emailed Defendant JIANG. The email read: "NTESY new quote." The attachments included a Quotation reflecting that on November 12, 2018, Defendant BROAD TECH quoted NTESY Technology Co., Ltd., a price of $106,970 for ninety-four gallons of Photoresist. This price included shipping to CIP Shanghai Airport.

l.  On or about November 13, 2018, Defendant SHIH sent an email to Defendant JIANG which read: "NTESY contract and pro forma invoice." Two .pdf documents were attached to the email. The first was a purchase order for ninety-four gallons of Photoresist from NTESY to Defendant BROAD TECH, dated November 13, 2018. The purchase order bore the

contract stamp for NEDI Technology Company Limited.  The second .pdf document attached to the email was an invoice, dated November 13, 2018 from Defendant BROAD TECH to NTFSY for ninety-four gallons of Photoresist.

m. On or about December 4, 2018, Defendant BROAD TECH issued a check to Company A for $52,432, representing payment for approximately fifty-eight gallons of Photoresist.

n. On or about December 18, 2018, Company A confirmed by email to Defendants JIANG and SHIH that payment of $52,432 had been received and that approximately fifty-eight gallons of Photoresist, representing a part of the total order, would be shipped.

o. On or about January 7, 2019, Defendant JIANG emailed Company B, the intended shipper of the Photoresist.  In this email Defendant JIANG provided a USCI code of 91320100134945253K for NTESY and a contact name at NTESY of Tang Bin.  A USCI (or USCC) code is a unique identification assigned by the Chinese government and is akin to a United States tax identification number.  This USCI identification code is the same one used by NEDI in October, 2018 when NEDI unsuccessfully attempted to obtain 58 gallons of Photoresist from Company A.  Additionally, Tang Bin was the listed contact name for NEDI on United States export documents in 2015 and 2017.

p. On or about January 8, 2019, Defendant BROAD TECH executed a letter of

instruction signed by Defendant SHIH, falsely identifying NTESY Technology Co., Ltd., No. 19 Su Yuan Ave., Nanjing, CHINA 211111 as the ultimate consignee for the approximately fifty-eight gallons of Photoresist.

q. On or about January 8, 2019, Company B, relying upon the false representations made by BROAD TECH in a letter of instruction signed by Defendant SHIH, filed export information with the United States government that falsely identified NTESY Technology, No. 19 Su Yuan Ave., Nanjing, China as the ultimate consignee of the fifty-eight gallons of Photoresist.

r. On or about January 29, 2019, BROAD TECH received a wire transfer of $65,984 to its account maintained at a bank within the United States from NTESY Technology Co., China, representing payment for the 58 gallons of Photoresist.  The wire transfer originated in Nanjing, China.

s. On or about January, February and March, 2019, Defendant JIANG and Defendant SHIH each communicated by email with Company A.  During these email communications, Defendants JIANG and SHIH represented that NTESY placed an order for thirty-six gallons of Photoresist, representing the balance of the previous ninety-four gallon order, as well as an order for HPRD 441 Developer.

t. On or about March 15, 2019, Defendant JIANG, on behalf of Defendant BROAD TECH transferred $32,544 by wire to Company A.  These monies

represented payment for thirty-six gallons of Photoresist which consisted of the balance of the original Defendant BROAD TECH SYSTEMS, INC. order for ninety-four gallons of Photoresist.

u. On or about April 19, 2019, Company A, acting at the direction of Defendant BROAD TECH, shipped to Company C, thirty-six gallons of Photoresist, as well as 131 pieces, which consisted of the requested order of HPRD 441.

v. On or about May 2, 2019, Defendant BROAD TECH executed a letter of instruction falsely identifying NTESY Technology Co., Ltd., No. 19 Su Yuan Ave., Nanjing, CHINA 211111 as the ultimate consignee for the approximately thirty-six gallons of Photoresist.

w. On or about May 3, 2019, Company B, relying upon the false representations made by BROAD TECH in a letter of instruction, filed export information with the United States government that falsely identified NTESY Technology, No. 19 Su Yuan Ave., Nanjing, China as the ultimate consignee of the thirty-six gallons of Photoresist.

All in violation of Title 18, United States Code, Sections 371 and 2.

## COUNT TWO
*Violation of the Export Control Reform Act*
50 U.S.C. § 4819

20.     The allegations in paragraphs 1 through 19 are incorporated by reference herein.

21.     On or about October 29, 2018, in the District of Rhode Island and

elsewhere, the defendants,

**(A) TAO JIANG,**
    **aka JASON JIANG**
**(B) BOHR WINN-SHIH, and**
**(C) BROAD TECH SYSTEM, INCORPORATED**

aided and abetted by each other and by others known and unknown to the grand jury,

did willfully attempt to cause parties within the United States to provide such goods

and services to a party on the BIS Entity List, to wit: **China Electronics Technology**

**Group Corporation 55th Research Institute (CETC 55) also known as Nanjing**

**Electronic Devices Institute; CETC Research Institute 55; NEDI: and NEDTEK,**

without first having obtained the required licenses or authorizations from BIS, in

violation of 50 U.S.C. § 4819 and 15 C.F.R. § 764.2.

## COUNT THREE
*Money Laundering Conspiracy*
18 U.S.C. § 1956(h)

22.     The allegations in paragraphs 1 through 19 are incorporated by reference

herein.

23.     Beginning in or around October, 2018, the exact date being unknown to

the grand jury, and continuing until on or about the date of this indictment, in the

District of Rhode Island, and elsewhere, the defendants,

**(A) TAO JIANG,**
    **aka JASON JIANG**
**(B) BOHR WINN-SHIH, and**
**(C) BROAD TECH SYSTEM, INCORPORATED**

aided and abetted by each other and by others unknown, with some joining the

conspiracy earlier and others joining later, did knowingly and willfully combine,

conspire, confederate, agree and have a tacit understanding with each other and with others known and unknown to the grand jury to violate Title 18, United States Code, Section 1956(a)(2)(A), that is, to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, $65,984 to a place in the United States on or about January 29, 2019, from and through a place outside the United States, that is, China, with the intent to promote the carrying on of a specified unlawful activity, to wit: Conspiracy to violate the Export Administration Regulations, an offense relating to violations of the International Emergency Economic Powers Act and the Export Control Reform Act of 2018, as charged in Count One of this indictment.

All done in violation of Title 18, United States Code, Sections 1956(h) and 2.

## FORFEITURE ALLEGATION

24.     The allegations contained in Counts One and Two of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(c), Title 18 United States Code, 982(a)(1), and Title 28, United States Code, 2461(c).

25.     Upon conviction of any of the offenses alleged in Counts One and Two of this Indictment, defendants,

**(A) TAO JIANG,**
     **aka JASON JIANG**
**(B) BOHR WINN-SHIH, and**
**(C) BROAD TECH SYSTEM, INCORPORATED**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to Title 18, United States

17

Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).  The United

States will also seek a forfeiture money judgment for a sum of money equal to the value

of any property, real or personal, which constitutes or is derived from proceeds

traceable to these offenses.

      26.     Upon conviction of the offense alleged in Count Three, the defendants,

> **(A) TAO JIANG,**
>     **aka JASON JIANG**
> **(B) BOHR WINN-SHIH, and**
> **(C) BROAD TECH SYSTEM, INCORPORATED**

shall forfeit to the United States any property, real or personal, involved in the offense,

or any property traceable to such property pursuant to Title 18, United States Code,

Section 982(a)(1).  The United States will also seek a forfeiture money judgment for a

sum of money equal to the value of any property, real or personal, involved in this

offense, and any property traceable to such property.

      25.     If any of the property described above as being subject to forfeiture, as a

result of any act or omission of the defendants:

     a.   cannot be located upon exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the Court;

     d.   has been substantially diminished in value;

     e.   has been commingled with other property that cannot be divided without

        difficulty;

the defendants shall forfeit to the United States any other property of the defendants,

up to the value of the property described above, pursuant to Title 21, United States

Code, Section 853(p).

A TRUE BILL:

REDACTED

AARON L. WEISMAN
United States Attorney


PAUL F. DALY, JR.
Assistant U.S. Attorney


WILLIAM J. FERLAND                    Date:  7.10.20
Assistant U.S. Attorney
Criminal Division Chief